Jon G. Shadinger, Jr., Esq. (036232017)
Shadinger Law, LLC
2220 N East Avenue
Vineland, NJ 08360
(609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiff, Dennis Maurer*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| DENNIS MAURER, an Individual <br><br> Plaintiff, <br><br> vs. <br><br> SIMS REALTY LLC, a New Jersey Limited Liability Company, <br><br> Defendant. | Case No. 1:26-cv-01130 <br><br> **<u>COMPLAINT</u>** |

### <u>Introduction</u>

Plaintiff, DENNIS MAURER, an individual ("Plaintiff"), on his own behalf and on the behalf of all other similarly situated mobility impaired persons hereby sues the Defendant, SIMS REALTY LLC, a New Jersey Limited Liability Company ("Defendant"), for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 <u>et</u> <u>seq.</u> ("ADA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 <u>et</u> <u>seq.</u> ("LAD").

### <u>The Parties</u>

1.      Plaintiff, DENNIS MAURER, is an individual over eighteen years of age and is otherwise sui juris. Mr. Maurer resides at 8 Prospect Avenue, Egg Harbor Township, NJ 08234.

1

2.      Defendant, SIMS REALTY LLC, owns and/or operates a place of public accommodation alleged by the Plaintiff to be operating in violation of Title III of the ADA and the LAD.

## Jurisdiction and Venue

3.      Defendant's property/place of public accommodation is a shopping center/plaza with several tenant spaces, known as 1004 Plaza, located at 1004 Cooper Street, Deptford, NJ 08096 ("1004 Plaza" or the "Property").

4.      Venue is properly located in the District of New Jersey because venue lies in the judicial district of the property situs.  The Property is located in and does business within this judicial district.

5.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.[1]

6.      Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C § 1367.

7.      The Defendant owns, leases, leases to, and/or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA.  The Defendant is thus required to comply with the obligations of the ADA.[2]

8.      Plaintiff is an individual with disabilities as defined by and pursuant to the ADA.  Mr. Maurer has multiple sclerosis and therefore has a physical impairment that substantially limits many of his major life activities[3] including, but not limited to, not being able to walk, stand, reach, or lift. Mr. Maurer, at all times, requires the use of a wheelchair to ambulate.

---

[1] See also 28 U.S.C. § 2201 and 28 U.S.C. § 2202
[2] 28 CFR § 36.201(a) and 28 CFR § 36.104
[3] as defined by 28 CFR § 36.105(b)(1-2)

2

**Factual Background**

9.      Mr. Maurer is a staunch advocate of the ADA. Since becoming mobility impaired (and having to fully rely on the use of his wheelchair to ambulate) he has dedicated his life to the elimination of accessibility discrimination so that he, and others like him, may have full and equal enjoyment of all public accommodations without fear of discrimination and repeated exposure to architectural barriers. Mr. Maurer is the President of an advocacy group, known as The Independence Project, whose goal is to foster a community of disabled people, educate them as to their rights, and ensure their accessibility to places of public accommodation across the country.

10.     Mr. Maurer continues to encounter architectural barriers at many of the places that he visits. Seemingly trivial architectural features such as parking spaces, curb ramps, and door handles are taken for granted by the non-disabled but, when improperly designed or implemented, can be dangerous to those in wheelchairs.

11.     The barriers to access that Mr. Maurer experiences at differing places of public accommodation are often similar in nature. For example, he is repeatedly faced with sloping in parking lots, improper curb ramps, abrupt changes of level within paths of travel, and non-accessible restrooms. He has become frustrated and disheartened by the repetitiveness of the complaints he has been forced to make to the employees and management at various establishments in the past; most often to no avail. Thus, he now finds his redress through the ADA; as Congress intended.

12.     As part of his duties within The Independence Project Mr. Maurer inspects properties that were previously in violation of the ADA and subject to litigation by advocacy group and/or its members.  Such properties are inspected by Mr. Maurer, or other members (based on scheduling and geography), in order to determine if such have been made accessible  and continue to remain

in compliance; it is his normal practice to inspect the properties under his purview at least twice

per year. Additionally, Mr. Maurer inspects additional properties, as a tester, that he visits as a

patron, or when they are incident to his inspection routes, and/or when they are along his usual

travel routes.

13.     The properties in close proximity to 1004 Plaza which have previously been subject to

litigation by The Independence Project and/or its members for non-compliance of the ADA and

are now subject to reinspection by Mr. Maurer are as follows:

   a. Locust Grove Plaza, located at 1692 Clements Bridge Road, Woodbury, NJ 08096; *The*
      *Independence Project, Inc., et al v. Locust Grove Plaza LLC*, No. 1:13-cv-05666-JS (D.N.J.
      filed Sep. 23, 2013)

   b. The Court at Deptford, located at 1500 Almonesson Road, Woodbury, NJ 08096; *The*
      *Independence Project, Inc., et al v. U.S. Bank*, No. 1:12-cv-06170-RBK-KMW (D.N.J.
      filed Oct. 10, 2012)

   c. The Plaza at Deptford, located at 1450 Clements Bridge Road, Woodbury, NJ 08096;
      *Maurer v. The Plaza at Deptford LP*, No. 1:14-cv-03651-JBS-AMD (D.N.J. filed June 6,
      2014)

14.     Mr. Maurer has visited the Property several times; his last visit occurring on or about

September 13, 2025, when he patronized several stores within the shopping center. On said visit

Mr. Maurer traveled to the Property with his family where they visited Philly Pretzel Factory,

Deptford News and Tabacco, the Victory Chinese Restaurant, and Rioh Nails and Spa. Mr. Maurer

and his family have visited the Property together on several occasions as bone fide patrons with

the intent to avail themselves of the goods and services offered to the public within; but found it

to be rife with violations of the ADA – both in architecture and in policy.

15.     Mr. Maurer resides approximately 52 miles from the Property. The Property is located in

close proximity to locations where he frequently travels and shops (specifically the Deptford Mall and the many surrounding shopping centers), and on his route to Philadelphia directly off the Atlantic City Expressway.

16.     Prior to the onset of his disease and his ensuing disability, Mr. Maurer was a licensed thoroughbred horse trainer and assistant horse trainer for over twenty-five years. Horseracing remains his passion; he attends workouts, trainings, sales, and live racing whenever possible – as such he regularly travels across New Jersey, Pennsylvania, and New York.

17.     The horse racing venues frequently traveled to by Mr. Maurer include, but are not limited to, the following:

    a.  Delaware Park Race Track, located at 777 Delaware Park Blvd, Wilmington, DE 19804
    b.  Harrah's Philadelphia Racetrack, located at 777 Harrah's Blvd, Chester, PA 19013
    c.  Parx Racing, located at 2999 Street Rd, Bensalem, PA 19020
    d.  Penn National Race Course, located at 777 Hollywood Blvd, Grantville, PA 17028
    e.  Monmouth Park, located at 175 Oceanport Ave, Oceanport, NJ 07757
    f.  Meadowlands Racetrack, located at 1 Racetrack Dr, East Rutherford, NJ 07073
    g.  Saratoga Racecourse, located at 267 Union Ave, Saratoga Springs, NY 12866

18.     The Property is on Mr. Maurer's route to several of the above horse racing venues, including Parx Racing, Penn National Race Course, and Harrah's Philadelphia Racetrack, each of which he travels to several times per year.

19.     Mr. Maurer will return to the Property in the future when traveling to and through the Deptford area as incident to his usual travels and when performing inspections at properties in the vicinity. Mr. Maurer shall make these visits not only as a patron but also to monitor any progress made with to respect to ADA compliance – he hopes his return visits are not further deterred nor made in vain.

20.    Mr. Maurer has personally encountered exposure to architectural barriers and otherwise harmful conditions that have endangered his safety at the Property.

21.    The ADA has been law for over thirty (30) years and the Property remains non-compliant. Thus, the Mr. Maurer has actual notice and reasonable grounds to believe that he will continue to be subjected to discrimination by the Defendant.

22.    Due to the foregoing, Mr. Maurer has a realistic, credible, existing, and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to the Property as described but not necessarily limited to the barriers he has personally experienced listed in Paragraph 31.

23.    Following any resolution of this matter Plaintiff will ensure that the Defendant undertakes the remedial work that is required to cure existing violations – under the appropriate standard and in full compliance with the ADA.

## COUNT I
### Violation of Title III of the
### Americans with Disabilities Act, 42 U.S.C. § 12181, et seq.

24.    Plaintiff realleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

25.    Enacted by overwhelming bipartisan consensus in 1990, and reinforced with the same consensus in 2008, the ADA reflects Congress's recognition that "discrimination" has precluded "many people with physical or mental disabilities" from "fully participat[ing] in all aspects of society."[4]

26.    Congress's objective was "the elimination or reduction of physical and social structures"

---

[4] 42 U.S.C. § 12101(a)(1)

6

that thwart "equal-citizenship stature for persons with disabilities."[5]

27.     Title III of the ADA provides a cause of action to "any person" with disabilities who personally encounters an unlawful accessibility barrier and is thus "subjected to discrimination on the basis of disability." [6]

28.     The Defendant has discriminated against the Plaintiff, and other similarly situated mobility impaired persons, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by the ADA.

29.     A preliminary inspection of the Property has shown that violations of the ADA exist. That inspection, performed by Plaintiff's expert, further revealed that the remediation of all violations/barriers listed in Paragraph 31 are both technically feasible and readily achievable. Plaintiff's expert has based this judgement on personal knowledge of materials, pricing, labor, and the completion of similar projects in the area. The remaining barriers to access – which are procedural in nature and/or policy based – will need to be monitored into the future to ensure that the current discrimination is ceased and never reinstituted.

30.     Each of the following violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 CFR part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at

---

[5] *Tennessee v. Lane*, 541 U.S. 509, 536 (2004) (Ginsburg, J., concurring)

[6] 42 U.S.C. § 12188(a)(1)

36 CFR § 1191, appendix B and D ("ADAAG"); and the 2010 Standards for Accessible Design ("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[7]

31.    The following are architectural barriers and violations of the ADA that Mr. Maurer has personally encountered during his visits to the Property:

**Parking and Exterior Accessible Route**

a.    The designated accessible parking spaces at the Property are not maintained due to surface cracking, contain abrupt changes of level greater than ¼", excessive sloping and cross-sloping beyond the limit of 2.1%, and lack proper identification signage; violations of the ADAAG and Sections 402 and 502 of the 2010 ADA Standards.  These barriers have presented Mr. Maurer with a tipping hazard which could also cause damage to his wheelchair; to avoid these obstacles he parks away from the facility in a flat maintained area, travels around the obstacles, and then through the vehicular area of the lot in order to reach the entrances but even when doing so he must still make use of the improper curb ramp as he has no other option.

b.    The designated accessible parking area fails to provide a compliant accessible route to the entrances and leads to improper curb ramps which contain excessive sloping and lack the requisite level landing areas; a violation of the ADAAG and Sections 402 and 502 of the 2010 ADA Standards. The curb ramp on the south end of the plaza contains excessive sloping, lack a level landing area, and is not wide enough for wheelchair users. The curb ramp on the north end of the plaza contains excessive sloping and protrudes into a non-accessible parking space – this would be a violation in any case but here it can become

---

[7] 28 CFR § 36.104

blocked out by a parked vehicle. Further, the access aisles do not directly to any curb ramp, this forces Mr. Maurer to travel behind parked vehicles and through traffic in order to reach the improper curb ramps; he has been impeded by the improperly designed curb ramps which have prevented him from accessing areas of the property, endangered his safety, and could cause damage to his wheelchair.

c.    The exterior accessible route at the Property fails to provide a safe continuous accessible route which leads throughout the entirety of the plaza. The current route, which contains an elevated portion of sidewalk that does run the length of the plaza, is impeded by excessive cross-sloping and abrupt changes of level (steps); a violation of the ADAAG and Section 402 of the 2010 ADA Standards. These conditions have presented Mr. Maurer with a tipping hazard which could cause injury from a fall, damage to his wheelchair, and prevented him from accessing the entirety of the Property.

d.    The Property fails to provide the requisite number of fully compliant accessible parking spaces and van-accessible parking spaces (as well as the requisite number of access aisles and van access aisles); a violation of the ADAAG and Section 502 of the 2010 ADA Standards. Due to the lack of compliant accessible parking (specifically the lack of compliant access aisles), Mr. Maurer has been forced to park away from the shopping center/plaza so that he could freely access his vehicle via his fold-out ramp; doing so and parking without the benefit of an access aisle adds the additional fear of becoming blocked out from his van (or trapped inside) by an adjacent vehicle.

e.    The Property fails to provide a compliant route to the adjacent street/sidewalk and/or the public transportation route. Mr. Maurer is precluded from accessing the Property from these areas due to the lack of an accessible route; a discriminatory omission which limits

his options for access and transportation; a violation of ADAAG and Section 206.2.1 of the 2010 ADA Standards.

**Access to Goods and Services**

f.  Tenant spaces Victory Chinese Restaurant, Deptford News & Tobaccos, and Rioh Nails and Spa provide interior service elements which are mounted beyond the prescribed reach ranges; in violation of the ADAAG and Sections 308, 902, and 904 of the 2010 ADA Standards. Due to their height or the presence of obstacles Mr. Maurer cannot make use of these interior service elements (payment devices, countertops, work surfaces, etc.).

**Restrooms**

g.  The restrooms within tenant spaces Victory Chinese Restaurant and Sushi Express are inaccessible to Mr. Maurer as they contain barriers to access including improper signage, improperly mounted grab bars, improperly placed dispensers (soap, paper towels, toilet tissue, etc.), obstructions which impede wheelchair maneuvering clearance due to policy failures, improper toilet centerlines, improperly mounted lavatories which lack the requisite knee clearance, and a lack of latch-side clearance required to exit the restrooms; violations of the ADAAG and Section 601 of the 2010 ADA Standards. Due to these barriers Mr. Maurer could not freely make use the restrooms.

h.  The restrooms within aforementioned tenant spaces contain dispensers which are mounted beyond the reach of wheelchairs users; violations of the ADAAG and Section 308 of the 2010 ADA Standards. Due to these barriers Mr. Maurer could not freely make use the restrooms.

i.  The restrooms within aforementioned tenant spaces contain lavatories that lack the required knee clearance; violations of the ADAAG and Section 606 of the 2010 ADA Standards.

Due to these barriers Mr. Maurer could not fully approach nor make use of the sinks.

j.   The restrooms within aforementioned tenant spaces provide grab bars which improperly mounted and contain toilets that have improper centerlines; violations of the ADAAG and Section 604 of the 2010 ADA Standards. Due to these barriers Mr. Maurer cannot independently access the toilets.

k.   The use of restrooms doors within the aforementioned tenant spaces is impeded by improper signage and a lack of wheelchair maneuvering clearance; violations of the ADAAG and Section 404 of the 2010 ADA Standards. Due to the lack of maneuvering clearance Mr. Maurer cannot enter/exit the restrooms without assistance.

32.   The discriminatory violations described in Paragraph 31 may not be an exhaustive list of the ADA violations that exist at the Property, but they are the result of a preliminary inspection and include those personally experienced by Mr. Maurer. Given the violations discovered and listed herein the Plaintiff alleges, on information and belief, that there are other violations/barriers at the Property which relate to his disability. Thus, Plaintiff requires thorough inspection of the Property in order to photograph and measure the architectural barriers which exist at the Property in violation of the ADA. Once said inspection has been completed, the Plaintiff may amend this complaint in order to provide proper notice to the Defendants regarding the full scope of this action.[8]

33.   Plaintiff, and other mobility impaired persons, will continue to suffer discrimination,

---

[8] See *Doran v. 7-Eleven Inc.*, (9th Cir. 2008) 524 F.3d 1034 (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them)

injury, and damage without the immediate relief provided for by the ADA and requested herein.

34.    Defendant has discriminated against Plaintiff, and other mobility impaired persons, by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

35.    Defendant continues to discriminate against Plaintiff, and other mobility impaired persons, by failing to remove architectural barriers, and communication barriers that are structural in nature.[9]

36.    Defendant continues to discriminate against Plaintiff, and other mobility impaired persons, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.[10]

37.    Defendant continues to discriminate against Plaintiff, and other mobility impaired persons, by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[11]

38.    If the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993[12] then the Defendant's facility must be readily accessible to and useable by individuals with disabilities in accordance with the 1991 Standards.

---

[9] 42 U.S.C. § 12181(b)(2)(A)(iv)

[10] 42 U.S.C. § 12181(b)(2)(A)(ii)

[11] 42 U.S.C. § 12181(b)(2)(A)(iii)

[12] as defined by 28 CFR § 36.401(a)(2)

39.     Pursuant to 28 CFR § 36.402(a)(1) "any alteration" made to the Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Property are readily accessible to and usable by individuals with disabilities, including individuals, like Mr. Maurer, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[13] Discovery in this matter will reveal if and when such alterations have taken place at the Property, and to what corresponding technical and scoping specification the Defendant must meet/exceed to bring the Property into compliance with the ADA.

40.     Pursuant to 28 CFR § 36.304(a) the Defendant shall remove all existing architectural barriers, including communication barriers that are structural in nature, where such removal is readily achievable.

41.     28 C.F.R. § 36.304(d)(2)(i) controls with respect to the corresponding technical and scoping specification to which each element – that has not been altered – must comply with or be modified to meet. Those are defined as follows:

a.  Elements that have not been altered since on or after March 15, 2012, must comply with the 1991 Standards.

b.  Elements that have existed prior to and have not been altered since on or after March 15, 2012, that do not comply with the 1991 Standards must be modified to comply with either the 1991 Standards or the 2010 Standards.

c.  Elements that have been altered on or after March 15, 2012, that do not comply with the 1991 Standards must be modified to comply with the 2010 Standards.

---

[13] 28 CFR § 36.402(a)(2)

42.    Although a plaintiff is not required to notify the Defendant of its violation of the ADA nor the ongoing discrimination prior to the filing of an action, Mr. Maurer has expressed to employees at the Property that barriers to access exist thereupon. To that end, he has found that voicing concerns to employees and management, making phone calls, and writing letters is futile. In his experience the only way to spur action and achieve the accessibility required under the law is to file matters, such as this, and pray for the relief contained herein.

43.    Plaintiff is without adequate remedy at law and is suffering irreparable harm, including bodily injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiff and the Defendant, a remedy in equity is warranted. The public interest would not be disserved by the issuance of a permanent injunction.

44.    Pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, Plaintiff is entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendant.

45.    Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Property and make such readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the Property until such time as the Defendant cures all violations of the ADA.[14]

**WHEREFORE,** Plaintiff demands;

a.    The Court issue a Declaratory Judgment determining that the Defendant is in violation of Title III of the ADA.

b.    Injunctive relief against the Defendant including an order to (1) cure all ADA violations

---

[14] 42 U.S.C. § 12188(b)(2)

existing at the Property listed herein and those later found through discovery within the next six months; (2) to make the Property accessible to and usable by individuals with disabilities; and (3) to require the Defendant to make reasonable modifications in policies, practices or procedures, to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.  An Order requiring the Defendant to cease discriminatory practices and to maintain the requisite accessible features at the Property – as required by the ADA.

d.  An award of attorney's fees, costs, and litigation expenses (including expert fees and costs) pursuant to 42 U.S.C. § 12205.

e.  Such other relief as the Court deems just and proper and is allowable under Title III of the ADA.

## COUNT II

**Violation of New Jersey Law
Against Discrimination, N.J.S.A. 10:5-1 et seq.**

46.  Plaintiff realleges and incorporates, by reference, all of the allegations contained in all of the preceding paragraphs.

47.  The Property is a place of public accommodation as defined by N.J.S.A 10:5-5.

48.  New Jersey law provides that all persons shall have the opportunity to obtain all the accommodations, advantages, facilities, and privileges of any public place of accommodation without discrimination on the basis of disability.  This opportunity is recognized and declared to be a civil right.[15]

---

[15] Pursuant to N.J.S.A 10:5-4

49.    As set forth above, the Defendant has violated the LAD by denying Mr. Maurer, and all other mobility impaired persons, the full and equal enjoyment of the goods, facilities, services, and accommodations available at the Property.

50.    As a result of the aforementioned discrimination through repeated exposure to architectural barriers and other harmful conditions, Mr. Maurer has sustained bodily injury through the Defendant's actions – either intentionally or negligently – in the form of emotional distress, mental anguish, dignitary harm, and humiliation; in violation of the LAD.

**WHEREFORE**, Plaintiff demands;

   a.  That this Court assume jurisdiction.

   b.  The Court issue a Declaratory Judgment determining that the Defendant is in violation of the LAD.

   c.  An injunction ordering Defendant to immediately comply with the LAD by removing all architectural barriers listed herein or later found through discovery.

   d.  A monetary award consisting of the individual Plaintiff's damages – to the maximum extent permitted, attorney's fees, and litigation expenses; including expert's fees and costs.

   e.  An order requiring the Defendant to cease discriminatory practices and to maintain the requisite accessible features at the Property – as required by the LAD.

   f.  Other relief that this Court deems just and proper and is allowable under the LAD.

Respectfully submitted on this 4th day of February 2026,

                                           */s/ Jon G. Shadinger Jr.*
                                         Jon G. Shadinger, Jr., Esq.
                                         Shadinger Law, LLC
                                         2220 N East Avenue
                                         Vineland, NJ 08360

(609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiff, Dennis Maurer*